## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DESIGN WITH FRIENDS, INC. and | ) | |
| DESIGN WITH FRIENDS LTD. | ) | |
| | ) | No. _____ |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | **Jury Trial Demanded** |
| TARGET CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

This is a complaint for copyright infringement, trade dress infringement, and breach of contract. Plaintiffs Design With Friends, Inc. and Design With Friends Ltd. (individually and collectively referred to herein as "DWF") bring this action against Target Corporation ("Target") and state as follows.

## NATURE OF THE ACTION

1.     This action arises from Target's blatant copying of DWF's unique and creative online nursery room design tool (the "DWF Design Tool"), which DWF launched in 2018.

2.     Dozens of Target employees and representatives at different locations have been active on the DWF Design Tool since at least as early as the fall of 2019, logging hundreds of hours of session time by users including product designers, art directors, UX/UI designers, senior CGI artists and more checking and sharing with each other every element of the DWF Design Tool user experience and application and conducting stress tests to figure out its capabilities.

3.     After systematic mining of DWF's website by numerous Target employees over the course of many months – many instances of which have been recorded by DWF – Target

launched its own design tool at the exact adapt-or-die May 2020 moment for furniture sales when sales plummeted only to recover by shifting 35% of all nursery industry sales to online sales, a paradigm shift which is forecasted to continue even after post-pandemic life.  As a result of Target's prior and ongoing misconduct, even following formal notice of DWF's claims, DWF files this action seeking damages and preliminary and permanent injunctive relief for copyright infringement under the Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 *et seq*, trade dress infringement under the Lanham Act, 15 U.S.C. § 1125(a), and breach of DWF's Terms of Use pursuant to Delaware state law.

## PARTIES

4.     Design With Friends, Inc. is a Delaware corporation with a registered agent address at 1313 N Market St Ste 5100, Wilmington, DE 19801.

5.     Design With Friends Ltd. is a privately-held Israeli company with a principal place of business at 50 Ramat Yam, Herzliya, Israel 4685150, IL.

6.     Target is a Minnesota company headquartered at 1000 Nicollet Mall, Minneapolis, Minnesota 55403.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over DWF's federal claim for copyright infringement and federal claim for trade dress infringement, under 28 U.S.C. §§ 1331, 1338(a), and supplemental jurisdiction over DWF's state law breach of contract claim, which arises out of the same case or controversy as DWF's copyright infringement claim, pursuant to 28 U.S.C. § 1367(a).

8.     This Court has personal jurisdiction over Target because Target is subject to general jurisdiction in the State of Delaware.  Target has established minimum contacts with this forum.  Target owns and operates at least three retail stores within this Judicial District and regularly and

systematically transacts business within this District.  Target maintains a fully interactive web site, www.target.com, whereby it makes available the infringing content that is the subject of this action to customers located in Delaware and this Judicial District.

9.      Venue is proper in this district under 28 U.S.C. § 1391 (b)(1), (b)(2), (c)(2) and § 1400(a) because this Court has personal jurisdiction over Target in this district, Target transacts business within this District, Target or its agents may be found in this district, and a substantial part of the events or acts giving rise to the claims occurred in this district.

## FACTUAL ALLEGATIONS

### DWF and its Copyrighted Nursery Design Tool

10.     DWF was formed as a startup venture in late 2017.  Up until that time, various other room planner technologies such as Autodesk Homestyler were available, but they are more professional tools that are very complicated for the average consumer, who was neither an interior designer nor architect, to use.  For example, prior existing room planner programs required hours of onboarding process to get started.

11.     DWF envisioned a more consumer-friendly, instantly-usable drag-and-drop style 3D nursery room design program that could be used on the computer or smart phone.  At the time, there was nothing of the sort.  Creation of a mobile web version was an even more complicated endeavor than a standard website, particularly because a compelling arrangement on the size of a phone screen requires creative choices and opportunities for design failure.  At the same time, a mobile web experience offered broader accessibility than an app, given its immediate accessibility to all consumers, as opposed to a dedicated app.

12.     DWF's goal was elegant in design, yet ambitious in execution – provide a nursery planner tool initially, and then expand its functionality to allow for creating the furniture layout of an entire home, including outdoor spaces and also non-home spaces such as dormitories.

13.     Creating a 3D planner, let alone one designed to provide an intuitive and seamless experience, and further a mobile-friendly version, was and is a complicated endeavor to achieve. The creative choices were endless, with countless details to work through, lots of user testing, and many hours spent working through every detail.  The design and development occupied an entire development team's full time.

14.     By early April 2018 the DWF Design Tool had come online for desktop only. It enjoyed early success, receiving outstanding reviews and comments, with constant improvements well into 2019 that could only be gleaned from careful study of ongoing consumer experiences and a commitment to perfecting and augmenting the many facets of the tool.

15.     By late 2018, DWF launched a mobile friendly version of the DWF Design Tool, which is a format that also caters toward non-professional users.

16.     DWF spent substantial amounts of time, money, and effort creating and compiling its DWF Design Tool content, including but not limited to paying special attention to the "look and feel" of the website to establish the trust of DWF's users, to identify to DWF's users that they are on DWF's site, and therefore, to drive sales through the DWF website and to attract business partners to engage with DWF.

17.     The DWF Design Tool drives sales of various consumer products by allowing furniture and other nursery items to be added to a mock room with the click of a button with a default of closest proximity toward the center of the room, and then dragged and dropped around the room in different locations and orientations.  These are not generic items but are actual items available from included stores shown in the selection tab of the DWF Design Tool with pictures, pricing, and other details.

18.     The items render in 3D depiction in the room, and if satisfactory the consumer simply adds the item to a registry.  Viewing the registry allows the user to see reviews, compare prices at included retailers, and click to purchase the item from the desired retailer.  Retailers have included, for example, Houzz, Walmart, Amazon, Etsy and Target.

19.     DWF's business model has a number of sources of revenue, including revenue from the ultimate click-through purchase of products by the consumer using the DWF Design Tool and customizing the DWF Design Tool for use directly by retailers on retailer website.

20.     DWF is the owner of a valid copyright, Registration No. VA0002268121, for the DWF Design Tool as it appeared and was published in October 2019, titled "Designwithfriends.com Website 2019 Version." A true and correct copy of proof of registration and the deposit for this registration are attached hereto as **Exhibit A**.

21.     DWF is the owner of a valid copyright, Registration No. TX0009001011, for the DWF Design Tool computer program published in October 2019, titled "Design with Friends Editor (2019)."  A true and correct copy of this copyright registration is attached hereto as **Exhibit B**.

22.     DWF created its 2019 DWF Design Tool forming the basis of the copyright registrations attached as Exhibits A and B in Israel and released it from Israel on October 17, 2019.

23.     DWF is the owner of a valid copyright Registration No. VA0002268133, for the DWF Design Tool as it appeared and was published in July 2020, titled "Designwithfriends.com Website 2020 Version." A true and correct copy of proof of registration and the deposit for this registration are attached hereto as **Exhibit C**.

24.     DWF is the owner of a valid copyright, Registration No. TX0009001026, for the DWF Design Tool computer program published in July 2020, titled "Design with Friends Editor (2020)."  A true and correct copy of this copyright registration is attached hereto as **Exhibit D**.

25.     DWF created its 2020 DWF Design Tool forming the basis of the copyright registrations attached as Exhibits C and D in Israel and released it from Israel on July 13, 2020.

26.     Collectively, DWF's above-referenced copyright registrations are referred to as the "DWF Design Tool Works."

27.     The DWF Design Tool Works are foreign works including all original related works by DWF and DWF owns copyrights in all modifications made from the release date forward.

**Target and its Infringing Conduct**

28.     In June 2020, a DWF board member emailed an executive at a popular home goods retailer and mentioned DWF and the DWF Design Tool.  The executive replied to the email and asked, "do they power Target?"  This began a detailed internal investigation.

29.     The investigation was startling in its revelation of the blatant nature of Target's misconduct, showing how Target used its copying of the DWF Design Tool in order to arrive at warp speed to the market with their own plagiarized room design tool (the "Infringing Design Tool") to protect and expand revenues as the pandemic and lock-downs raged on.

30.     The overlapping look and feel of the DWF Design Tool and the Infringing Design Tool is overwhelming, and they are more than substantially similar to one another.  The similarities include both how the design interfaces look and how they operate – similarities that Target copied while ignoring the plethora of design alternatives and variations that could and would have been employed if copying had not taken place.

31.     The user experience of the DWF Design Tool and the Infringing Design Tool are almost exactly the same: only square rooms; walls with no thickness; the appearance, movement and placement of items including floor and wall items; its absence of a ceiling had been updated since January 6, 2019 to include its visibility from specific angles (similar to the walls); the division and appearance of the catalog; the appearance of the shopping list; and more.

32.     The room editors of the DWF Design Tool and the Infringing Design Tool look the same. The way the camera pans around the room is the same, the camera starts at the same angle and distance, the walls not facing the camera are made invisible in the same way, and the walls have no depth and include a baseboard. The room even loads with one door and one window in the same place. Both tools enable only the elegant alternative of a rectangular room. An example image appears below comparing the two tools.



33.     The DWF Design Tool and Infringing Design Tool's Catalogs work the same way and are divided in essentially the same manner. In the desktop version the catalogs appear on the left hand side of the screen; in the mobile version, the catalogs go up halfway, pushing the room up and making it smaller but still accessible in the same way. The way the Catalog slides up and room shrinks looks the same, and the top bar is the same. An example image appears below comparing the two tools in the mobile version.



**DWF**                    **TARGET**

34.     The DWF Design Tool and Infringing Design Tool contain the same options under "Walls & Floor" (Edit Room), including adding doors and windows, and resizing the room, with Target merely eliminating the Wallpaper and Wall Trim buttons:



35.     The DWF Design Tool and Infringing Design Tool resize rooms in the same way through Walls & Floor (Edit Room). The size is automatically changed without having to save. When dimensions are changed items immediately move accordingly.



36.     Rotation of items in the DWF Design Tool and the Infringing Design Tool are also the same. The option to rotate appears below an item and works with a long press. The item menus are virtually the same and follow the item around in the room above the item. Replacing (swapping) an item works in the same way, automatically opening the correct category.



**DWF**                    **TARGET**

37.     Painting a single wall in the DWF Design Tool and the Infringing Design Tool works in the same way:



38.     All beds in both the DWF Design Tool and Infringing Design Tool come with a built-in mattress.  Sheets are added in the same way through the catalog menu. Users click a sheet and it is automatically added to the crib in the room.



**DWF**                                    **TARGET**

39.    Items in the DWF Design Tool and the Infringing Design Tool both "jump" or overlap onto other items in the same way:



**DWF**



**TARGET**

40.    Items in the DWF Design Tool and the Infringing Design Tool both slide along the wall in the same way:



**DWF**

**TARGET**

41.    Items in the DWF Design Tool and the Infringing Design Tool both are placed in the room in the same way. Users click on a new item in the catalog and it appears by default in the center of the room (floor items) or in the middle of the wall facing the camera (wall items):



**DWF**



**TARGET**

42.    Even the presence of baseboards and the way curtains are placed in the DWF Design Tool has been replicated in the Infringing Design Tool. Both DWF Design Tool and the Infringing Design Tool have a baseboard option, and only one pre customized type of baseboard. Curtains should be placed on a window but in the DWF Design Tool a less than optimal user experience allows them to be placed anywhere on a wall. This same issue also appears in the Infringing Design Tool, and both curtain positions are fixed open in the same proportions:



43.    The call to action in both DWF Design Tool and the Infringing Design Tool is also exactly the same (as opposed to "design your nursery" or many other options):



44.     The DWF Design Tool and the Infringing Design tool also have extremely similar

"How it works" sections:



  

45.    Loading in the DWF Design Tool and the Infringing Design Tool is the same, including the same animation over the item in the catalog (as opposed to many other options: first over entire screen, in the room, the catalog goes down and then loading appears, for example):



46.    On or before January 11, 2021, Target implemented a design tool focusing on college dormitory spaces (http://www.target.com/room-planner/college) that is substantially indistinguishable from the Infringing Design Tool, further violating DWF's copyrights.  A true and accurate screenshot of the Target college room planner follows:



47.     On or before March 2, 2021, Target implemented a design tool focusing on outdoor spaces (http://www.target.com/room-planner/outdoor) that is substantially indistinguishable from the Infringing Design Tool, further violating DWF's copyrights.  A true and accurate screenshot of the Target college room planner follows:



48.     The foregoing design choices for the DWF Design Tool are the result of numerous discretionary creative selections to create a product that as a whole offers an enjoyable user experience that is also aesthetically pleasing.  The significant overlap of the Infringing Design Tool cannot be and is not coincidental.

49.     Dozens of Target employees and representatives at different locations have been active on the DWF Design Tool since at least as early as the fall of 2019. Overall, hundreds of hours of session time on the DWF Design Tool have been logged by users from and related to Target since that time, including product designers, art directors, UX/UI designers, senior CGI artists and more. Such users created and shared many rooms with each other and checked every element of the DWF Design Tool user experience and application.

50.     Several Target users signed up with their Target e-mail addresses and many used IP addresses related to Target from Chicago, Minnesota and Bengaluru (Bangalore), India.  Target has authority over and responsibility for such employees and agents acting on behalf of Target and any of its affiliated companies.

51.     Target conducted stress tests on the DWF Design Tool to figure out its capabilities. While expectant parents often create rooms with names like "Jays room" or "Lilys room", Target's employees created rooms with names like "demo1" and "test2". And, while most legitimate rooms are created with a standard setup of bed, dresser, and the like, Target employees' rooms were loaded with complex graphics by Target CGI artists to stress rendering and other technologies.

52.     Target engineers from India opened browser developer tools many times during sessions, upon information and belief, to reverse engineer the product as much as they could and check product capabilities. These engineers had access to determine which libraries the DWF Design Tool uses, the room data structure, API calls and aspects of the computer code. Engineers

opened developer tools many times, specifically at the exact moments where HTTP requests were sent in order to investigate API calls and network flow.

53.     Target employees were particularly active from October of 2019 through the launch of the Target Infringing Design Tool, during which time there were large spikes in activity related to product specification of the Target nursery product, product development and prelaunch testing.

54.     Target's copying of the DWF Design Tool and publishing of the Infringing Design Tool constitutes willful copyright infringement.

55.     The foregoing conduct is also a violation of DWF's Terms of Use set out on the DWF website and available at http://www.designwithfriends.com/terms ("Terms of Use"). A true and correct copy of said terms of use is attached hereto as **Exhibit E**.

56.     The Terms of Use are expressly governed by and interpreted under Delaware law.

57.     The Terms of Use "govern [users'] access to and use of Design With Friends (the "Company") website (the "Site"), any information, text, graphics, animations, images, 3D items and renders or other materials appearing on the Site or made available on the Site (the "Content"), and any services provided through the Site, including, without limitation, the interior design application which, among others, allows our users to design nurseries and other spaces with the use of our Content (the "Services")."

58.     The Terms of Use specify that "[b]y accessing or using the Site, Content, or Services, you agree to be bound by these Terms of Use. If you are using the Services on behalf of an organization, you are agreeing to these Terms of Use for that organization and its authorized users and representing that you have the authority to bind that organization to these Terms of Use."

59.     Target, through its employees and agents, therefore voluntarily accepted and agreed to the applicable Terms of Use by accessing the DWF website and DWF Design Tool.  Target also

accessed and viewed the Terms of Use. Target and its web-savvy employees and agents are sophisticated in the field of website terms of use and limitations on conduct flowing from the same.

60.     The Terms of Use accepted by Target and its employees and agents require acknowledgement that the DWF website, content, and services, any derivative works thereof, any improvements, enhancements, updates and upgrades thereto and any intellectual property rights in or related to any of the foregoing are and will remain the exclusive property of DWF.

61.     The Terms of Use also require agreement not to attempt to decipher, decompile, disassemble or reverse engineer any of the software used to provide the DWF site, content, or services.

62.     DWF provided Target, through its employees and agents, access to the DWF website and DWF Design Tool whereby their use of the DWF website and DWF Design Tool violated and breached the applicable Terms of Use by, *inter alia*, copying and/or reverse engineering the DWF Design Tool and developing the Infringing Design Tool.

63.     Prior to filing suit, DWF provided notice to Target of its infringement on July 20, 2020.

   a.   Far from Target denying its design tool was built off the back of the DWF Design Tool, Target admitted in response that its employees accessed the DWF website, but nevertheless failed to cease its use and made the nursery tool a cornerstone of its business model to provide for growth of its sales in the midst of the quarantine-driven online pandemic environment and win-out over the online competition.

   b.   Despite multiple letters exchanged, Target doubled down by continually monitoring DWF's website and implementing yet additional design improvements

that DWF made – including with regard to the way that the nursery tool and shopping features interacted.

c. And as noted above, Target also subsequently launched substantially similar college dorm and outdoor space planner tools in light of the success of the nursery planner.  Thus, Target has not only continued to infringe, but has further copied DWF's iterative creative choices so Target continues to enjoy maximum benefit from its copying.

64.     Thus, in light of this ongoing, expanding and intentional infringement by Target, this lawsuit follows.

## COUNT I
### COPYRIGHT INFRINGEMENT
### (17 U.S.C. §§ 104, 106 and 501)

65.     DWF incorporates herein and re-alleges all previous paragraphs of its Complaint.

66.     As alleged above, the DWF Design Tool is an original creative work and as such, it constitutes a protectable work under the Copyright Act.

67.     DWF created its DWF Design Tool in Israel and released it first to the DWF website from Israel on April 7, 2018.  The DWF Design Tool was then released from Israel to the DWF mobile application on July 1, 2018. The DWF Design Tool is a foreign work including all original related works by DWF and modifications made from the release date forward.

68.     DWF is the exclusive owner and copyright holder of the DWF Design Tool Works. A true and correct copy of DWF's copyright registration for the DWF Design Tool is attached hereto as **Exhibit A**.

69.     DWF's copyright registrations for the DWF Design Tool Works constitute prima facie evidence of the validity of DWF's copyrights therein and of the facts stated in the certificates under 17 U.S.C. § 410.

23

70.     Target, through its Infringing Design Tool, has copied, produced, reproduced works based upon, distributed, and publicly displayed DWF's protected work in the DWF Design Tool without DWF's consent.  Target has copied the original components of the DWF Design Tool, including the look and feel and functional elements that are part of its original.

71.     Target also had access to the DWF Design Tool through DWF's online website, where the DWF Design Tool was displayed, and where Target was able to access it and copy it.

72.     Target also had access to and a reasonable opportunity to see and actually did see the DWF Design Tool.

73.     Target's Infringing Design Tool is substantially similar to the original DWF Design Tool because an ordinary observer would conclude that Target unlawfully took protectable material of substance and value from the DWF Design Tool.

74.     Alternatively, DWF is entitled to a rebuttable presumption of copying even if access to the DWF Design Tool were not shown, because the Infringing Design Tool is so strikingly similar to the DWF Design Tool that a reasonable person would assume that Target copied from the DWF Design Tool and that there is no possibility of independent creation, coincidence, or prior common source.

75.     Target did not, and does not, have any license, authorization, permission or consent to reproduce or distribute the DWF Design Tool.

76.     By its actions alleged in this Complaint, Target has directly infringed DWF's copyright in and relating to the DWF Design Tool by reproducing the copyrighted work and distributing the copyrighted work to the public on an unlimited and unrestricted basis without permission in violation of the Copyright Act, 17 U.S.C. §§ 104, 106 and 501.

77.     Target's acts of infringement were and are willful, intentional, and purposeful, in disregard of and with indifference to DWF's rights. Even after notice of infringement, Target continued to expand and repurpose its Infringing Design Tool, including to service dorms and outdoor areas.  Certain of Target's modifications to the Infringing Design Tool track and follow close in time to modifications made to the DWF Design Tool, further showing intentional copying.

78.     Target's infringement has been undertaken knowingly, and with intent to financially gain from DWF's protected copyrighted work.

79.     Based on Target's blatant disregard of DWF's notice and demand letter and follow-up correspondence, Target's refusal to acknowledge the damage caused by its copyright infringement of the DWF Design Tool, and Target's continued infringement of the DWF Design Tool, DWF has been harmed and is entitled to recover Target's profits attributable to Target's infringement acts in an amount to be proved at trial.

80.     As a result of Target's wrongful conduct, DWF has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.

81.     Unless the Court restrains Target from infringing DWF's protected work, Target has no future legal impediment to infringing DWF's rights and the harm will continue to occur in the future.  Accordingly, DWF is further entitled to injunctive relief.

## COUNT II
## TRADE DRESS INFRINGEMENT

82.     DWF incorporates herein and re-alleges all previous paragraphs of its Complaint.

83.     The DWF Design Tool's unique and creative stylistic choices have secondary meaning, being widely recognized by consumers and having become a valuable indicator of the

source and origin of the information provided, which in turn, drives DWF's success, and positions DWF as a leader in its field.

84.    Target copied DWF's stylistic choices, including the design, layout, wording, animations (including item loading and, in the mobile web tool, automatic resizing of the menu and room portions of the interface when an item is added, so the room becomes larger and the menu retracts in size), and more from the DWF Design Tool.

85.    The user experience of the DWF Design Tool and the Infringing Design Tool are almost exactly the same, displaying only square rooms, walls with no thickness, similar appearance, movement and placement of items including floor and wall items, the division and appearance of the catalog, the appearance of the shopping list, and more. Examples of the "look and feel" components of the DWF Design Tool which were copied by Target include, but are not limited to:

  a.   The way the camera pans around the room is the same. The camera starts at the same angle and distance, the walls not facing the camera are made invisible in the same way, and the walls have no depth and include a baseboard.

  b.   The room loads with one door and one window in the same place.

  c.   The catalog goes up halfway, pushing the room up and making it smaller but still accessible in the same way, and the top bar appears the same.

  d.   The same options under "Walls & Floor" (Edit Room), including adding doors and windows, and resizing the room.

  e.   Resizing rooms in the same way through Walls & Floor (Edit Room), where the size is automatically changed without having to save, and when dimensions are changed items immediately move accordingly.

f.  The option to rotate appears below an item and works with a long press in the same way.

g.  The item menus are virtually the same and follow the item around in the room above the item.

h.  Replacing (swapping) an item works in the same way, automatically opening the correct category.

i.  Painting a single wall works in the same way.

j.  All beds come with a mattress built in, and sheets are added in the same way through the catalog menu. Users click a sheet and it is automatically added to the crib in the room.

k.  Items "jump" or overlap onto other items in the same way.

l.  Items slide along the wall in the same way.

m.  Items are placed in the room in the same way. Users click an item in the catalog and it appears in the center of the room (floor items) or in the middle of the wall facing the camera (wall items).

n.  The presence of baseboards and the way curtains are placed in the DWF Design Tool has been replicated. Curtains should be placed on a window but in the DWF Design Tool a less than optimal user experience allows them to be placed anywhere on a wall. This issue also appears in the Infringing Design Tool, and both curtain positions are fixed open in the same proportions.

o.  Loading is the same, including the same animation over the item in the catalog (as opposed to many other options: first over entire screen, in the room, the catalog goes down and then loading appears, for example).

86.     Target's use in commerce of the DWF Design Tool's content, and/or content confusingly similar to DWF's, including a confusingly similar "look and feel," is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Target with DWF, or as to the origin, sponsorship, or approval of the Target's services, information, or commercial activities with DWF in violation of 15 USC §1125(a).  The trade dress infringement has caused actual confusion in the marketplace.

87.     Target's conduct was willful and deliberate, and in flagrant disregard for DWF's intellectual property rights.

88.     As a direct and proximate result of Target's violation of DWF's trade dress, DWF has suffered and continues to suffer damages in an amount to be proved at trial.

89.     As a result of Target's wrongful conduct, DWF has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.

90.     Unless the Court restrains Target from infringing DWF's protected trade dress, Target has no future legal impediment to infringing DWF's rights and the harm will continue to occur in the future.  Accordingly, DWF is further entitled to injunctive relief.

## COUNT III
## BREACH OF CONTRACT

91.     DWF incorporates herein and re-alleges all previous paragraphs of its Complaint.

92.     Target, through its employees and agents, voluntarily accepted and agreed to the applicable Terms of Use by accessing the DWF website and DWF Design Tool, including, without limitation, (i) acknowledging the DWF website, content, and services, any derivative works thereof, any improvements, enhancements, updates and upgrades thereto and any intellectual property rights in or related to any of the foregoing are and will remain the exclusive property of

DWF; and (ii) agreeing not to attempt to decipher, decompile, disassemble or reverse engineer any of the software used to provide the DWF site, content, or services.  The content and services of the DWF website include the DWF Design Tool.

93.     DWF provided Target, through its employees and agents, access to the DWF website and DWF Design Tool whereby they violated and breached the applicable Terms of Use by, *inter alia*, utilizing DWF's copyrighted information to outright copy and reverse engineer and develop an intended substitute product or service in order to improperly solicit DWF's existing and prospective customers.

94.     DWF has been, and will continue to be damaged as a result and proximate cause of Target's breach of the Terms of Use in an amount to be proved at trial.

95.     DWF has been, and will continue to be, irreparably harmed by this breach of the Terms of Use and are without an adequate remedy at law. Accordingly, DWF is further entitled to preliminary and permanent injunctive relief.

## PRAYER FOR RELIEF

Plaintiff respectfully requests the following relief:

A.     An award of judgment to DWF on all Counts of the Complaint;

B.     An order preliminarily and permanently enjoining Target and Target's officers, agents, employees, and attorneys and those other persons who are in active concert or participation with Target who receive actual notice, permanently from infringing the copyrighted DWF Design Tool and its trade dress;

C.     An order requiring Target to permanently modify its print, digital, online, and other marketing, advertising, and promotional material, to completely remove its Infringing Design Tool and derivatives, including its design tools for dorms and outdoor areas;

D.      The impoundment of all Target's materials that infringe DWF's copyright and/or trade dress, as well as any other articles that contain or embody copies of DWF's original work and/or trade dress;

E.      The destruction of all Target's materials that infringe DWF's copyright and/or trade dress, as well as any other articles that contain or embody copies of DWF's original work and/or trade dress;

F.      An award to DWF of a full accounting for all of Target's profits attributable to the infringement of the DWF Design Tool, as set forth in 17 U.S.C. § 504, 15 U.S.C. § 1117 and pursuant to Delaware state law;

G.      General, compensatory, consequential and other recoverable damages for all claims;

H.      General, compensatory, consequential and other damages for breach of contract;

I.      An award of costs to DWF under 17 U.S.C. § 505, 15 U.S.C. § 1117 or as otherwise provided by law;

J.      An award of DWF's attorney's fees pursuant to 15 U.S.C. § 1117 or as otherwise provided by law;

K.      An award of prejudgment interest and post-judgment interest in the maximum amount permitted by law; and

L.      Such other and further relief that this Court may deem just and equitable.

## **DEMAND FOR A JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of all issues so triable.

Dated: September 28, 2021

OF COUNSEL:

Howard Wisnia
WISNIA PC
12707 High Bluff Dr., Suite 200
San Diego, CA 92130
858.461.0989
howard@wisnialaw.com

Ben L. Wagner
TROUTMAN PEPPER HAMILTON
SANDERS LLP
11682 El Camino Real, Suite 400
San Diego, CA 92130
858.509.6010
ben.wagner@troutman.com

Lindsay Mitchell Henner
TROUTMAN PEPPER HAMILTON
SANDERS LLP
600 Peachtree Street, NE, Suite 3000
Atlanta, GA 30308
404.885.3805
lindsay.henner@troutman.com

/s/ Douglas D. Herrmann
Douglas D. Herrmann (#4872)
TROUTMAN PEPPER HAMILTON
   SANDERS LLP
1313 Market Street, Suite 5100
Wilmington, DE 19899
302.777.6500
douglas.herrmann@troutman.com

*Attorneys for Plaintiffs Design with Friends, Inc. and Design With Friends Ltd.*