IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DESIGN WITH FRIENDS, INC.;
DESIGN WITH FRIENDS LTD.

*Plaintiffs*,

v.

No. 1:21-cv-01376-SB

TARGET CORPORATION

*Defendant*.

---

Douglas Daniel Herrmann, TROUTMAN PEPPER HAMILTON SANDERS LLP, Wilmington, DE; Ben L. Wagner, TROUTMAN PEPPER HAMILTON SANDERS LLP, San Diego, CA; Lindsay Mitchell Henner, TROUTMAN PEPPER HAMILTON SANDERS LLP, Atlanta, GA; Howard Wisnia, WISNIA PC, San Diego, CA.

*Counsel for Plaintiffs*.

Martina Tyreus Hufnal, FISH & RICHARDSON P.C., Wilmington, DE; Kristen McCallion, Vivian Cheng, FISH & RICHARDSON P.C., New York, NY.

*Counsel for Defendant*.

---

**MEMORANDUM OPINION**

September 23, 2022

BIBAS, *Circuit Judge*, sitting by designation.

A company may feel cheated if a competitor copies its product. But copying by itself can be legal. To win in court, the company must show that a law protects its product from copying.

Design with Friends alleges that Target copied its software tool. Because much of that tool is not protected, I dismiss most of its claims. The only claim that survives is that Target copied its copyrighted computer code.

## I. BACKGROUND

On this motion to dismiss, I take the complaint's factual allegations as true. Design with Friends has an online room-planning tool. Users can add furniture and decorations, arrange them, and then buy the items they have added. The tool is meant to be user-friendly and has been commercially successful. 1st Am. Compl., D.I. 12 ¶¶ 10–24.

Target has a similar online room-planning tool. This similarity, says Design with Friends, is no coincidence—it claims that Target's engineers spent many hours reverse engineering the Design with Friends tool to build their own. *Id.* ¶¶ 33–37, 55–61.

Design with Friends demanded that Target stop this copying, but it did not. *Id.* ¶ 73. So it sued Target on three theories: trade-dress infringement, copyright infringement, and breach of contract. *Id.* ¶¶ 75–106. Target now moves to dismiss.

I consider whether Design with Friends' "complaint … contain[s] sufficient factual matter, accepted as true, to state a [plausible] claim to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

## II. THE TRADE-DRESS CLAIM FAILS

Design with Friends first claims that Target infringed its protected trade dress. To win, it must articulate the specific design elements that comprise that trade dress. *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 309 (3d Cir. 2014). It also must show that (1) the design is nonfunctional, (2) the design is inherently distinctive or has acquired secondary meaning, and (3) consumers are likely to confuse the source of its tool with the source of Target's. *Id.* Although Design with Friends has specified its trade dress and alleged (2) secondary meaning, it fails to show that (1) its dress is nonfunctional and (3) consumers will likely be confused.

To describe its trade dress, Design with Friends has listed fifteen elements that together form its tool's cohesive "look and feel." D.I. 12 ¶ 96. Target says that this list is not precise enough because Design with Friends has alleged that its trade-dress components "either are, or include but are not limited to," the listed elements. *Id.*; Pls.' Br., D.I. 16 at 5. But Design with Friends has provided a clear list of design features that it is trying to protect. So it is precise enough.

Design with Friends must also show that its design has acquired secondary meaning: that it is independently recognizable and associated with the company. *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 211, 216 (2000). As proof, Design with Friends points out that its tool has been used extensively, advertised widely, and praised in industry publications. D.I. 12 ¶¶ 17–21. This suffices to allege secondary meaning. Target objects that this shows only that the *tool* is well-known, not that the *trade dress* is. D.I. 16 at 8–9. But because Design with Friends alleges

3

that its trade dress is the overall look and feel of the tool, the tool's recognition is the dress's.

Still, precision and secondary meaning are not enough. Design with Friends must also show that its design is not functional. Functional means useful: a design feature is nonfunctional only if it does not affect the tool's quality and serves only to identify its source. *Ezaki Glico Kabushiki Kaisha v. Lotte Int'l Am. Corp.*, 986 F.3d 250, 255–58 (3d Cir. 2021); *Fair Wind*, 764 F.3d at 311. Most of the elements on Design with Friends' list are functional because they make the tool more sensible. For instance, making the walls facing the camera invisible lets users see the room. Putting the option to rotate beneath an item makes that option quicker to find. And automatically adding sheets to cribs makes the design more realistic. D.I. 12 ¶ 96. The other elements do not help identify the tool's source. For example, it is common to see rotating loading icons online. Design with Friends has not explained how the ways that items slide along walls and move over one another are distinctive and identify the brand, either. *Id.*

But wait, says Design with Friends. I should focus not on the listed items one by one, but rather on the "look and feel" they form as a whole. Def.'s Resp. Br., D.I. 17 at 4–6. But Design with Friends must still show that this overall look and feel is nonfunctional. *Fair Wind*, 764 F.3d at 310–11. Here, too, it has not. The whole, like its parts, is functional. It is not a "composite tapestry of visual effects" that serves merely to identify the tool's source. *Id.* at 311 (internal quotation marks omitted); *see Ezaki Glico*, 986 F.3d at 259–60 (holding that a cookie stick's overall design is useful

4

and therefore not protectable trade dress). The tool's overall design makes it easy to use. Design with Friends says as much. *See* D.I. 12 ¶ 3 (explaining that the tool is designed to be "consumer-friendly [and] instantly-usable").

I could stop there. For completeness, I note that Design with Friends has also failed to show that consumers are likely to be confused about the sources of its tool and Target's. Design with Friends alleges "actual confusion" but gives no example. *Id.* ¶ 97. Its allegation of likely confusion similarly falls short—Design with Friends has not explained why consumers would be confused about the sources of tools that are accessed through different websites, sell different merchandise, and have different graphics. *See id.*

Because Design with Friends' design is functional and not likely to confuse consumers, it is not protectable trade dress. So I dismiss this claim.

### III. ONE COPYRIGHT-INFRINGEMENT CLAIM SURVIVES

To prove copyright infringement, Design with Friends must plausibly allege that Target copied protectable elements of its work. *Whelan Assocs., Inc. v. Jaslow Dental Lab'y, Inc.*, 797 F.2d 1222, 1231 (3d Cir. 1986). In copyright as in trade dress, a protectable element must be original and nonfunctional. 17 U.S.C. § 102. That applies to foreign works too. *Id.* § 104(b), (c) (granting the same scope of copyright protection to domestic and foreign works); *cf.* D.I. 12 ¶¶ 5, 32 (Design with Friends Ltd. is an Israeli company). So its claim that Target copied its tool's function, look and feel, and "selection, arrangement and coordination" of visual elements fails for the reasons above. *Id.* ¶ 76.

5

Design with Friends also holds copyrights in its tool's graphics and code. *Id.* ¶¶ 25–29; Exs. A–D, D.I. 12-1 to -4. It argues that Target copied these graphics. Yet its own side-by-side pictures show that its tool and Target's are visually distinct. D.I. 12 ¶¶ 38–53. See, e.g., D.I. 12 ¶¶ 43–44 (Design with Friends' paints selected from columns, but Target's paints selected from a grid; sheets designed and presented differently). This "visual comparison of the works" is appropriate at the motion-to-dismiss stage. *Tanksley v. Daniels*, 902 F.3d 165, 172 (3d Cir. 2018) (internal quotation marks omitted) So this claim fails too.

But Design with Friends has plausibly alleged copying of its computer code. Copyright infringement can be proven by access and similarity. *Id.* at 173. Design with Friends recorded Target repeatedly using its software-development applications to access and stress-test Design with Friends' tool. D.I. 12 ¶¶ 55–61. And Design with Friends alleges extensive similarities in the tools' mechanics. Although these mechanics are functional, even such non-protectable elements can still be compared for evidence of actual copying. *See Tanksley*, 902 F.3d at 173.

Target wants us to discount this circumstantial evidence. It says that Design with Friends should have just gone to Target's website, viewed the tool's source code, and compared it to Design with Friends' own code. Reply Br., D.I. 18 at 9, n.25. But Target admits that only "at least some" of the tool's code is available this way. *Id.* at 9. And it has not shown that the *relevant* portions of the code are so easily accessible.

So Design with Friends has done enough. I will let its copyright-infringement claim go forward on a theory of code copying.

6

## IV. THE BREACH-OF-CONTRACT CLAIM ALSO FAILS

Design with Friends has browsewrap terms of use that bar copying or reverse engineering its tool. D.I. 12 ¶¶ 64–71; Ex. E, D.I. 12-5. It says that Target knew or should have known about these terms when its employees used the website. D.I. 12 ¶¶ 64–71. Thus, argues Design with Friends, Target formed a contract not to copy the tool and then breached that contract.

Target objects that this copying claim is preempted by copyright law. D.I. 16 at 18–19. But I need not reach that question. Even if the claim is not preempted, Design with Friends has not plausibly alleged that it formed a contract with Target.

Design with Friends offers two theories of contract formation. Both fail. First, it alleges that Target employees clicked through the browsewrap link and viewed the terms of use. D.I. 12 ¶¶ 64–72. But it offers no specific facts to support this. Elsewhere, by contrast, Design with Friends lists particular instances when Target employees were recorded using its tool. *Id.* ¶¶ 55–61. The bare assertion that Target employees saw the terms, without similarly specific support, does not meet the plausibility threshold. Nor can we infer that Target employees knew that the terms were there: Design with Friends has not alleged that the link to its terms was conspicuous enough to satisfy the high standard for browsewrap terms. *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175–79 (9th Cir. 2014).

Second, Design with Friends argues that Target employees had constructive notice of the website's terms of use. After all, they are tech-savvy and work for a company with its own website and its own terms of use. D.I. 12 ¶ 69. But it is common knowledge that websites have terms of use. That does not mean a person manifests

7

assent to be bound by them every time he uses a website. 1 Timothy Murray, *Corbin on Contracts* § 2.12[2] (2022) ("Unless the [user] actually knows or is put on inquiry notice of the hyperlink and manifests assent to the terms of use … they are unenforceable.").

\* \* \* \* \*

Target might have copied Design with Friends' tool. But copying alone is not a problem. Design with Friends has not plausibly alleged that Target copied protectable aspects of its tool. Nor has it plausibly alleged that Target contractually agreed not to copy the tool. Yet it has stated a plausible claim that Target copied its computer code. So the case can proceed on that claim alone. And I will grant Design with Friends leave to amend.