IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DESIGN WITH FRIENDS, INC.

*Plaintiff,*

v.

No. 1:21-cv-01376-SB

TARGET CORPORATION

*Defendant.*

Douglas Daniel Herrmann, James Harry Stone Levine, Ben L. Wagner, Howard W. Wisnia, Ryan A. Lewis, Sean P. McConnell, Troutman Pepper Hamilton Sanders, LLP, Wilmington, Delaware.

*Counsel for Plaintiff.*

AnnaMartina Tyreus Hufnal, Douglas Edward McCann, Kelly A. Del Dotto, Adam J. Kessel, Jessica Cohen-Nowak, Juanita R. Brooks, Katherine H. Reardon, Kayleigh E. McGlynn, Kenton W. Freeman, Kristen McCallion, Ryan McKay, Ryan V. Petty, Vivian Cheng, Fish & Richardson, P.C., Wilmington, Delaware.

*Counsel for Defendant.*

### MEMORANDUM OPINION

September 6, 2024

BIBAS, *Circuit Judge*, sitting by designation.

Even shaky facts must reach the factfinder. Design with Friends says that Target copied its room-planning website and breached the website's terms of use. After

exhaustive discovery, each side has marshaled enough evidence to survive summary judgment.

## I. DESIGN AND TARGET BUILD ONLINE ROOM PLANNERS

Design made a website that lets users pick out and arrange furniture in a three-dimensional virtual room. D.I. 30 ¶¶ 21, 29, 46. A few years later, Target did the same. D.I. 273-4, at 6. Now, Design claims that Target infringed the "concept and feel" of its planner. D.I. 263, at 12.

At first, Design said that Target had taken its source code. D.I. 30 ¶¶ 143–63. But it has since dropped that claim and argues only that Target copied its website's distinctive appearance. D.I. 182, at 17 n.4. It says that Target's planner looks too much like its own, with similar visuals like the layout of the virtual room and the customization menu. D.I. 263, at 13. It also says that Target breached its website's terms of use. *Id.* at 8.



*Static images of the Design website (left) and the Target Home Planner (right). D.I. 30-1, at 8, 20.*

Both parties moved for summary judgment. D.I. 257, 258. On each issue that they raise, I shall grant summary judgment if "there is no genuine dispute as to any material fact" and the moving party is "entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A fact is "material" only if it "might affect the outcome of the suit under the governing law." *Id.*

## II. ON COPYRIGHT INFRINGEMENT, THE FACTFINDER MUST RESOLVE GENUINE DISPUTES

Design claims that Target infringed its copyright in its room planner's look and feel. To establish infringement, Design must prove that (1) it owns a valid copyright, and (2) Target copied its original, protected expression. *Feist Publ'ns v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). A copyright's registration is "prima facie evidence" of its validity. 17 U.S.C. § 410(c). "[A]ctual copying can be established by direct evidence or inferred by evidence of access and similarities that are probative of copying between the works . . . ." *Dam Things from Den. v. Russ Berrie & Co.*, 290 F.3d 548, 562 (3d Cir. 2002) (internal quotation marks omitted). And that copying is actionable copyright infringement if "viewing the item through the lay person's eyes," the two works have "substantial similarities relate[d] to protectible material." *Id.*

### A. Design's planner is copyrightable

Target argues that it cannot have infringed Design's copyright because Design's room planner cannot be copyrighted. Copyright protects the specific form in which someone expresses an idea, not the idea itself. *Whelan Assocs., Inc. v. Jaslow Dental Lab'y, Inc.*, 797 F.2d 1222, 1234 (3d Cir. 1986). So Lin-Manuel Miranda can copyright *Hamilton*, but he could not copyright the concept of a musical about a Founding Father. And it protects only expression that has some amount of originality. *Feist*

3

*Publ'ns v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 345 (1991). Originality can involve taking components that have long existed and arranging them into something new. *Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 207 (3d Cir. 2005). Think of a collage artist who takes a stack of photographs, newspaper clippings, and magazine ads—none of which would be original on its own—and joins them into an arrangement that is new and so can be copyrighted. *Cf. Silvertop Assocs. Inc. v. Kangaroo Mfg. Inc.*, 931 F.3d 215, 220 (3d Cir. 2019).

Design's room planner is copyrightable because it checks both boxes. Design is not claiming a copyright in all planners with views of empty rooms, but one in *its* planner with *its* view *of its* room. That is not a generic idea but a particular expression. And Design points to specific features of its planner—walls so thick and no thicker, a camera angle turned just so—that add up to a distinctive look. D.I. 274-19, at 40. Even if none of those features would be original by itself, their combination is original enough to qualify for a copyright.

I do not decide here whether any particular component of the room is original or whether Design might have other reasons its planner is protected. Instead, the planner is copyrightable for at least the reasons discussed here. So I deny Target's motion to declare otherwise.

**B. Errors in Design's copyright application do not invalidate its copyright registration**

Target next seeks to invalidate Design's copyright registration. It says that the copyright registration got important facts wrong, including the publication date, the nation of first publication, and the content of the deposit. D.I. 259, at 23–24. But a

4

registration—even an inaccurate one—is valid unless Design put information into the copyright application "with *knowledge* that it was inaccurate." 17 U.S.C. §411(b)(1)(A) (emphasis added). "Lack of knowledge of either fact or law can excuse an inaccuracy in a copyright registration." *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 595 U.S. 178, 182 (2022). That is enough to sink Target's argument. Even if I assume that Design made mistakes in its copyright application, Target has no evidence to rebut Design's assertion that it did so unknowingly. D.I. 317, at 26.

It can be hard to find facts showing that someone actually *knew* something. So Target instead says that Design, through its lawyer, was willfully blind to the application's errors. It faults the lawyer for not researching the rules about how to designate the nation of publication and for relying on his client's assertion about the website's historical completion dates. D.I. 259, at 28–29 (citing D.I. 261-6, at 12). Yet at most, those facts show that the lawyer acted recklessly. Maybe he should have investigated further. But he did not "deliberately shield[] [himself] from clear evidence" about the allegedly inaccurate publication dates and locations. *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011). Nor did he "blind" himself to the legal requirements for copyright registration. *Id.* With his limited experience registering copyrights for computer programs, he may have misunderstood the complicated law about publication. *See Unicolors*, 595 U.S. at 187–88. That is not enough to show knowledge, so it is not enough to invalidate Design's registration.

**C. Errors in Design's deposit do not invalidate its copyright registration**

Target takes another tack to challenge Design's copyright registration. To register an audiovisual work or a computer program, applicants must submit a deposit

5

containing a copy that is representative of their work. 37 C.F.R. § 202.20(c)(2)(vii)–(viii). Target points out that Design's deposit was not an exact and contemporaneous copy of its room planner. And it argues that these flaws make the registration void. D.I. 259, at 16–25.

An error in a copyright application taints a registration only if the applicant knew of the error and the error was material. 17 U.S.C. § 411(b)(1). Congress wanted "to make it easier, not more difficult, for nonlawyers to obtain valid copyright registrations." *Unicolors*, 595 U.S. at 187. It sought to protect copyrights from invalidation based on "applicants' good-faith misunderstandings." *Id.*

True, that statutory provision covers applications, not deposits. But I see no reason to hold the two to different standards. I must consider not only that "particular statutory language," but also "the language and design of the statute as a whole." *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988). It would be strange for the Copyright Act to protect applicants from honest application mistakes but not honest deposit mistakes. And nothing else in the Copyright Act suggests that reading. So an inadvertent error in a deposit does not invalidate a copyright.

The Third Circuit has not yet addressed this question. But the weight of authority agrees. *See Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 486–87 (9th Cir. 2000); *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1161–63 (1st Cir. 1994); *Nicholls v. Tufenkian Import/Export Ventures, Inc.*, 367 F. Supp. 2d 514, 520 (S.D.N.Y. 2005). *Contra Geoscan, Inc. of Tex. v. Geotrace Techs., Inc.* 226 F.3d 387,

393 (5th Cir. 2000) (holding that an error in a deposit invalidated a copyright without discussing its materiality).

Because Target's evidence does not show that Design knew of the inaccuracies in its deposit, I deny Target's request to invalidate the copyright registration. I also deny its motion to refer its quibbles to the Register of Copyrights. D.I. 157. And I need not reach the parties' dispute about whether Design's planner is a U.S. or foreign work; either way, the planner's appearance is presumptively protected.

**D. The factfinder must decide whether the planners are similar enough**

Design asks me to go a step further. It seeks summary judgment on its claim that Target infringed the room planner. But genuine disputes of material fact remain, so I deny this motion too.

Design argues that it has direct evidence that Target copied its website. That evidence is weak, at best. Design points to a glitch in how both programs place window curtains. They let users put curtains anywhere in the room, adorning blank wall rather than windows. D.I. 263, at 20–21. Such a glitch might show that Target copied the underlying code. But Design dropped that claim. And I see no reason why Target would copy the "look and feel" of a misplaced curtain.

Design also says Target directly copied its website by taking screenshots and recording videos of focus groups using the tool. D.I. 263, at 18–20. It says these reproductions are themselves infringements, whether or not Target copied them into its planner. *Id.* But Target can raise a fair-use defense because it used these reproductions for research and inspiration. *See* 17 U.S.C. § 107. The factfinder must decide

7

whether Target has proven the elements of the fair-use defense. So I will not resolve it on summary judgment.

As an alternative to proving direct copying, Design argues that I can infer actual copying. That requires three showings: (1) that Target had access to Design's planner, (2) that the two planners had *probative* similarities suggestive of copying, and (3) that a lay observer would believe that Target copied protectible aspects of the Design planner based on *substantial* similarities between the two interfaces. *Dam Things from Den.*, 290 F.3d at 562 (describing the ordinary observer test for actual copying). The first and second steps can be shown with expert-witness testimony, but the third must be decided by the factfinder. *Id.*

Design wants a different test. In "copyright cases involving exceptionally difficult materials," courts consolidate the second and third showings into one substantial-similarity test and allow the factfinder to rely on expert-witness testimony to decide it. *Whelan*, 797 F.2d at 1233. That approach lets experts explain the important features of specialized material, like computer code, that is "complex[] and unfamiliar[] to most members of the public." *Id.* at 1232. But this case does not require it. Design dropped its claims about source code. It argues only that the two websites look similar. Because both companies designed their websites for everyday people, a jury is well-equipped to compare them.

Turning to the facts, Target admits that it had access to the Design planner. D.I. 60 ¶ 2. So the parties focus their arguments on the second step. For probative similarity, both parties rely on their experts. Design's expert identifies elements shared

by both planners and opines that these similarities set the planners apart from others in the industry. D.I. 274-19, at 70. But Target's expert responds that the programs share only those traits that are typical to most room planners on the market. D.I. 338-1, at 14. In doing so, he establishes facts supporting Target's merger and *scènes à faire* defenses. D.I. 337, at 18. Because I may not resolve this factual dispute, I leave it to the factfinder.

I do the same for the substantial-similarity step. A work is substantially similar to another when "the ordinary observer, unless he set out to detect the disparities [in the two works], would be disposed to overlook them, and regard their aesthetic appeal as the same." *Tanksley v. Daniels*, 902 F.3d 165, 174 (3d Cir. 2018) (alteration in original) (quoting *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir. 1960) (Learned Hand, J.)). Here, the jury will represent the ordinary observer and decide substantial similarity. So I deny Design's motion for summary judgment on its copyright-infringement claim.

### III. THE BREACH-OF-CONTRACT CLAIM TURNS ON WHETHER TARGET HAD NOTICE

Design also alleges that Target breached a contract between them by violating Design's terms of use. Under Delaware law, a breach-of-contract claim has three elements: (1) the existence of a contractual obligation, (2) a breach of that obligation, and (3) resulting damages. *Greenstar, LLC v. Heller*, 814 F. Supp. 2d 444, 450 (D. Del. 2011). Design says that Target improperly "use[d] the [website] on or in connection with any other service" and "access[ed] or search[ed] the [website] with any engine,

9

software, tool, agent, device, or mechanism other than normal web browsers." D.I. 263, at 34 (emphasis and internal quotation marks omitted).

Target first argues that no contractual obligation existed because the terms of use were unenforceable. These terms were browsewrap: a user had to click on a link at the bottom of the website to see them. D.I. 30-1, at 5–7. As I explained before, browsewrap is enforceable only when it was "(1) viewed by the user (thus putting him on actual notice) or (2) sufficiently conspicuous (inquiry notice)." D.I. 57, at 7. Target argues that it had neither form of notice. D.I. 259, at 33. But Design has gathered enough evidence to reach the factfinder. One Target employee admitted, out of context, that she had "agreed" to the terms. D.I. 273, at 9. And Design has user-tracking data showing that Target employees may have opened the terms of use. D.I. 242-5, at 144. Though this evidence is not especially convincing, it prevents me from finding the browsewrap unenforceable at this stage.

Target also says that the terms are illusory and thus unenforceable. Design could "revise" them "from time to time." D.I. 242-5, at 165. But if it had revised a term, the user would not have been bound by the revision until he accessed the site "after… any such revision." *Id.* And Design did not modify any relevant term while Target developed its planner. *Compare* D.I. 30-1, at 7 (2018 Terms), *with* D.I. 30-3, at 86 (2020 Terms). So it could not have and did not modify the contract without notice.

If the terms are enforceable, Design has evidence that Target breached one term. Though some terms were preempted by the Copyright Act, others remain. For one, users could not "access or search" Design's website "with any engine, software, tool,

10

agent, device or mechanism other than … generally available third party web browsers." D.I. 242-5, at 168. But Design cannot prove that Target breached this term because Target employees used only tools that were built into a widely available third-party web browser. *See* D.I. 338-3, at 13. More effectively, Design points to its term that forbade "us[ing] the [website] on or in connection with any other service, for any purpose." D.I. 242-5, at 167. That broad language goes beyond just banning copying Design's website. It stops users from leveraging the site to develop a competitor tool altogether. Target admits that it accessed the website while developing its own planner. *See* D.I. 60 ¶ 2. So if the contract is enforceable, Target breached it.

And if Target breached, Design reaches a factfinder on damages. When calculating damages, Design's expert believed that the damages Design could recover for infringement were the same as the damages it could recover for breach. D.I. 261-7, at 8–13. Target says that preemption, under the Copyright Act, demands that I strike the overlapping breach-of-contract damages. D.I. 259, at 36–37. But overlapping remedies, or even *identical* remedies, do not trigger preemption. *Nat'l Car Rental Sys., Inc. v. Comput. Assocs. Int'l, Inc.*, 991 F.2d 426, 434–35 (8th Cir. 1993).

I deny both parties' motions for summary judgment on breach of contract. Going forward, the parties should focus their arguments on whether any Target employee had actual or inquiry notice of the terms of use. If a contractual obligation existed, then Target breached it.

### IV. ALL DISGORGEMENT-DAMAGE ARGUMENTS MOVE FORWARD

Design asks for a staggering *$3 billion* in damages. D.I. 247-1, at 38–39. Even if Design wins on copyright infringement and breach of contract, that number has little

11

relationship to the harms it suffered. If a jury grants anywhere near that much in damages, I will use my remittitur power to lower the amount.

Yet Design can reach the factfinder with its claims. If it proves copyright infringement, it may also recover the "profits [that Target] earned not by selling an infringing product, but rather earned from [its] operations that were enhanced by the infringement." *William A. Graham Co. v. Haughey*, 568 F.3d 425, 442 (3d Cir. 2009). Under §504(b), we use a "two-step framework for recovery of indirect profits." *Id.* First, Design must prove a "causal nexus" between Target's infringement and its gross revenue. *Id.* In other words, Design must show that "the infringement contributed to [Target's] profits." *Id.* at 443. "Second, once the ca[usal] nexus is shown, the infringer bears the burden of apportioning the profits that were not the result of infringement and may adduce evidence of offsets permitted by the statute." *Leonard v. Stemtech Int'l Inc*, 834 F.3d 376, 395 (3d Cir. 2016) (internal quotation marks omitted).

Design shows evidence of a causal nexus through its experts. One expert opined that Target made money from its room planner through: (1) direct sales to customers who bought things while using the planner; (2) online sales to customers who used the planner on the same day that they bought things; (3) in-store sales to customers who used the planner to research products before shopping in person; (4) revenues from social media, Target's media network, and planner reviews; and (5) lifetime sales to customers who became loyal to Target after using the planner. D.I. 234, at 5–7. Some of these revenue streams seem quite attenuated from the infringement, but Design need not prove that Target earned every cent by stealing its planner's

12

appearance. It need only "create[] a triable issue regarding whether the infringement at least partially caused the profits that [Target]" earned in these revenue streams. *Leonard*, 834 F.3d at 396 (internal quotation marks omitted). It did. And Target raises enough evidence to rebut its claims with experts of its own. So the factfinder will decide whether Design proved a causal nexus.

The factfinder will also decide apportionment. At this second step, the burden shifts to Target to show that it earned revenue not from the infringement, but from other inputs. *Id.* at 395. Design argues that Target's apportionment expert should be excluded, leaving Target without facts to support its claims. Because I will deny this *Daubert* motion in a forthcoming ruling, I will also deny the motion for summary judgment.

## V. DESIGN DID NOT PURSUE ITS SOURCE-CODE CLAIM

In its amended complaint, Design alleged that Target had infringed its source code. But it has dropped that argument. D.I. 182, at 17 n.4. So I will grant Target's motion for summary judgment on the source-code claim.

## VI. MOST OF TARGET'S DEFENSES SURVIVE SUMMARY JUDGMENT, BUT UNCONSCIONABILITY DOES NOT

Design seeks summary judgment on twelve defenses raised by Target. D.I. 263, at 35. But Target has facts supporting ten of them. So I grant summary judgment to Design on just two defenses: no willful conduct (Target's seventh defense) and unconscionability (Target's tenth defense). Target recognizes that the no-willful-conduct is irrelevant because Design has not sought statutory damages. D.I. 337, at 28 n.23.

Target does not contest Design's claim that its unconscionability defense is deficient as a matter of law.

\* \* \* \* \*

Because both parties raise enough facts to survive summary judgment, most of this case will proceed to trial.