IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DESIGN WITH FRIENDS, INC. and
DESIGN WITH FRIENDS LTD.

        *Plaintiffs,*

        v.                    No. 1:21-cv-01376-SB

TARGET CORPORATION

        *Defendant.*

---

Derek T. Ho, Matthew D. Reade, Andrew Skaras, KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, PLLC, Washington, D.C.; Elena C. Norman, Anne Shea Gaza, Samantha G. Wilson, Rodney Square, YOUNG CONWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware.

        *Counsel for Nonparty Validity Finance, LLC.*

Adam J. Kessel, Kayleigh E. McGlynn, FISH & RICHARDSON PC, Boston, Massachusetts; Juanita R. Brooks, FISH & RICHARDSON PC, Redwood City, California; Douglas E. McCann, Martina Tyreus Hufnal, FISH & RICHARDSON PC, Wilmington, Delaware; Kristen McCallion, Vivian Cheng, FISH & RICHARDSON PC, New York, New York.

        *Counsel for Defendant.*

---

**MEMORANDUM OPINION**

September 27, 2024

BIBAS, *Circuit Judge*, sitting by designation.

Discovery requests can reach only so far. Here, Target seeks reams of documents from Validity Finance about its funding of this lawsuit. Because Target demands information that is attorney work product or too burdensome to disclose, I grant Validity's motion to quash.

## I. The Lawsuit and Litigation Finance

Design with Friends is a small company with a big claim. It is suing Target for copyright infringement and breach of contract. *See Design with Friends, Inc. v. Target Corp.*, No. 21-01376, 2024 WL 4103737 (D. Del. Sept. 6, 2024) (related summary judgment). Validity Finance is a litigation financier; it funds lawsuits and advises the plaintiffs who bring them. D.I. 112 ¶¶ 4, 10. Design had the claim, Validity had the cash, and each saw a mutually beneficial deal.

In 2021, Design's counsel approached Validity to discuss financing and advising a tranche of lawsuits, including this one. D.I. 112 ¶ 12. First, Validity needed to assure itself that this was a claim worth backing, so it signed nondisclosure agreements with Design. Next, Design's lawyers sent over a trove of confidential documents containing the facts that the lawyers considered most important, as well judgments about "the merits of [Design's] proposed claims, [Design's] planned litigation strategy, predictions about Target's … litigation strategy, and counsel's estimates of expected damages." *Id.* ¶ 22. Validity then had its lawyers assess the strength of Design's claims and the expected value of damages. *Id.* ¶ 24.

Those assessments left a trail of information about what Design's claim was worth. And they were the judgments of lawyers with insider knowledge, conferring

candidly behind the shield of a nondisclosure agreement. D.I. 112 ¶¶ 13–15, 24. So Target wanted to get its hands on them. It served Validity with a broad subpoena that has been pared down to five requests: (1) Validity's valuations of this lawsuit and its components, along with documents underlying those valuations; (2) communications between Design (or its counsel) and Validity before Design and Validity signed a litigation-funding agreement; (3) information about Validity and its relationship with Design; (4) more documents about Validity's valuation of the suit and its relationship with Design; and (5) other related documents. D.I. 133, at 10–11; D.I. 108-1, at 39.

Validity moved to quash the subpoena, arguing it sought material that was privileged and disproportionately burdensome. I agree.

## II. MANY OF THE DOCUMENTS ARE ATTORNEY WORK PRODUCT

Any documents related to Validity's valuations, as well as Validity and Design's communications about the suit, are attorney work product. Validity did not waive its work-product protection, so I grant its motion to quash as to these documents.

### A. Valuations and communications are opinion work product

The work-product doctrine protects (1) documents and tangible or intangible things (2) prepared in anticipation of litigation (3) by or for a party or its representatives, including lawyers, consultants, and agents. Fed. R. Civ. P. 26(b)(3)(A); *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 662 (3d Cir. 2003). The requested records plainly meet element (1). Design and Target dispute elements (2) and (3).

Under Third Circuit law, a document was created in anticipation of litigation if, "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared … because of the prospect

3

of litigation." *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1264 (3d Cir. 1993) (internal quotation omitted). That sentence could be read three ways. It could mean that a document is work product if it would not have been created but for a lawsuit. Or it might tell courts to ask whether the primary purpose for creating the document was to prepare for possible litigation. Or maybe it means a combination of the two. District courts have divided over which way to read it. *Compare Martz v. Polaris Sales Inc.*, No. 22-CV-01390, 2024 WL 199550, at *3 (M.D. Pa. Jan. 18, 2024) (reading the Third Circuit as rejecting primary-purpose test and instead asking "whether … the document would not have been created in substantially similar form but for the prospect of litigation" and litigation was "a motivating force in creating the document"), *with In re Federated Mut. Funds Excessive Fee Litig.*, No. 04cv352, 2010 WL 11469561, at *4 (W.D. Pa. Mar. 25, 2010) ("The focus is on the purpose for which the report was created.").

In theory, the difference might matter. Validity would not have created these documents but for the prospect of litigation. At the same time, the documents straddle the line between legal and business purposes.

But whatever work product's precise scope, it includes these documents. They are confidential documents created by lawyers to evaluate the strengths, weaknesses, and strategy of an impending lawsuit. While those documents informed an investment decision, they did so by evaluating whether a lawsuit had merit and what damages it might recover. That is legal analysis done for a legal purpose. *See United States v. Adlman*, 134 F.3d 1194, 1201–02 (2d Cir. 1998) (rejecting a rule that would

4

deny work-product protection to "documents analyzing anticipated litigation, but prepared to assist in a business decision rather than to assist in the conduct of the litigation"); *see also* J. Maria Glover, *Alternative Litigation Finance and the Limits of the Work-Product Doctrine*, 12 N.Y.U. J. L & Bus. 911, 924–25 (2016) (reporting that most courts hold that litigation-finance communications were created in anticipation of litigation). The work-product doctrine exists to protect lawyers' research into and candid discussions about their claims. *United States v. Nobles*, 422 U.S. 225, 238–39 (1975); *Hickman v. Taylor*, 329 U.S. 495, 510–11 (1947). That means records like these.

The final question is whether Validity created these documents as Design's representative. The records cover two periods: before and after Validity agreed to fund the suit. In both periods, this element is met.

Start with Validity's status after it agreed to provide funding. A "representative" includes a "consultant … or agent." Fed. R. Civ. P. 26(b)(3)(A). So the work-product doctrine protects the work of the caravan of consultants, accountants, and experts who follow modern litigants to trial. *See In re Cendant*, 343 F.3d at 665; *Nobles*, 422 U.S. at 238–39. That includes Validity: it not only funded Design's lawsuit but also consulted on the suit's strategy and progress. D.I. 112 ¶¶ 12, 29. So its post-agreement actions clearly fall within Rule 26(b)(3)(A).

Now take the period before Validity agreed to fund the suit. It was also acting as Design's representative back then. Validity and Design were mutually bound by nondisclosure agreements, and Validity was evaluating Design's claim at Design's

request. That is the kind of sensitive litigation assistance that makes someone a representative. *See* Fed. R. Civ. P. 26(b)(3)(A) (protecting work of consultants and agents); *cf.* Model Rules of Pro. Conduct r. 1.18 (ABA 2020) (discussions with clients whom lawyer has not yet agreed to represent are confidential).

It would make no sense to protect only those documents created after the parties formally sign a financing agreement. Work-product doctrine is "intensely practical …, grounded in the realities of litigation in our adversary system." *Nobles*, 422 U.S. at 238. In litigation finance, one of those realities is that financiers need to evaluate the strength of a case before agreeing to fund it. These internal discussions leave a revealing trail of mental impressions, legal theories, and strategic notes—all created as confidential internal documents or sent under nondisclosure agreements, and so written with vulnerable candor. *See Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA*, No. 7841, 2015 WL 778846, at *9 (Del. Ch. Feb. 24, 2015). If the work-product doctrine did not protect these records, then plaintiffs who got litigation finance would need to expose these confidential attorney impressions to their opponents. That would chill lawyers from discussing a pending case frankly. The work-product doctrine was created to prevent that result. *Nobles*, 422 U.S. at 238; *Hickman*, 329 U.S. at 510–11.

\* \* \* \* \*

Because these documents contain "mental impressions, conclusions, opinions, or legal theories … concerning the litigation," as well as "evaluation[s] of the strengths and weaknesses of [Design's] case," they are opinion work product. *Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985); Fed. R. Civ. P. 26(b)(3)(B). So they are almost absolutely

6

protected from discovery. *Hickman*, 329 U.S. at 510; *In re Ford Motor Co.*, 110 F.3d 954, 962 n.7 (3d Cir. 1997), *abrogated on other grounds by Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009). I quash the subpoena as to them.

### B. Validity did not waive its work-product protection

Target counters that Validity's privilege log was so vague that Validity waived any work-product protection. D.I. 133, at 19–20. Parties can waive a privilege or protection by failing to send a timely privilege log or leaving allegedly privileged or protected documents off it, thus failing to assert their rights. *See Rhoads Indus., Inc. v. Bldg. Corp. of Am.*, 254 F.R.D. 216, 221, 226 (E.D. Pa. 2008). Validity did neither. True, Validity's log claimed privileges and protections over categories of information instead of identifying specific documents. But the log existed. D.I. 108-1, at 56. It was timely. *Id.* at 38, 56. And it covered the documents here. *Id.* at 56. So Validity did not waive its protection.

### III. THE REMAINING DISCOVERY REQUESTS ARE DISPROPORTIONATE

That leaves Target's request for documents about the relationship between Design and Validity and discovery about Validity itself. I deny each remaining request because each would impose a burden disproportionate to their value. Fed. R. Civ. P. 26(b)(1).

Target already has the documents that Design sent Validity. D.I. 108 ¶ 9. So it may not burden a nonparty by asking for them again. *Kelley v. Enhanced Recovery Co.*, No. 15-6527, 2016 WL 8673055, at *3 (D.N.J. Oct. 7, 2016).

As for information about Validity's relationship with Design, Target seeks this from the wrong source. If Validity has information about this relationship, then

Design presumably does too. Target should have sought this information from Design before demanding it from a nonparty. *See Avago Techs. U.S., Inc. v. IPtronics Inc.*, 309 F.R.D. 294, 299 (E.D. Pa. 2015); *Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978 (Fed. Cir. 1993).

When it comes to details about Validity, any negligible value is outweighed by the burden on a nonparty. Target already knows that Validity is funding the suit and that it does not need to approve a settlement. D.I. 134-4, at 3. Further minutiae about Validity are hardly relevant to whether Target infringed a copyright or breached a contract years before Validity entered the picture. Fed. R. Civ. P. 26(b)(1) (discovery must be "relevant to any party's claim or defense"); *see also In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prod. Liab. Litig.*, 405 F. Supp. 3d 612, 615 (D.N.J. 2019) (allowing discovery into litigation financing "only if good cause exists").

This slight relevance does not justify intrusive inquiries into the internal operations of a nonparty. So I grant Validity's request to quash these requests as well.

\* \* \* \* \*

Because Target seeks to discover material that is either protected or disproportionately burdensome, I grant Validity's motion to quash.